## BARNHILL'S ADM'R v. MT. MORGAN COAL CO.

### (District Court, E. D. Kentucky. May 13, 1910.)

1. NEGLIGENCE (§ 23*) — INJURIES TO CHILDREN — DANGEROUS PREMISES — "TURNTABLE DOCTRINE."

The turntable doctrine imposes a liability on a property owner for injuries to a child of tender years, resulting from something on his premises that can be operated by such a child and made dangerous by him, and which is attractive to him and calculated to induce him to use it, where he fails to protect the thing so that a child of tender years cannot be hurt by it.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 33, 34, 129; Dec. Dig. § 23.*]

2. NEGLIGENCE (§ 23*)—INJURIES TO CHILDREN—DANGEROUS PREMISES—TURNTABLE DOCTRINE.

Defendant coal company maintained a quantity of empty coal cars weighing 1,000 pounds each on a side track. There were 300 feet of level track between the point where the cars were located and a point in the main track where it began to run down hill, and the company had derailed a car at the connecting point of the side track with the main track so that it was necessary to re-rail such car before any of the cars could be moved down the incline. Certain boys from 15 to 17 years of age accomplished this, pushed the empties to the incline, and mounted them, and were running them on the main track down the incline when plaintiff's intestate, a child 10 years of age, ran behind the front car and fell on the track and was run over and killed by a following car. There was no proof that these cars could be moved by children under 14, or that defendant had ever been notified that such children had ever attempted to operate the cars, or that a similar accident had ever occurred. *Held*, that defendant was not guilty of actionable negligence under the turntable doctrine.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 33, 34, 129; Dec. Dig. § 23.*]

3. NEGLIGENCE (§ 23*)—INJURIES TO CHILDREN—"CHILDREN OF TENDER AGE."

A child of tender age must be less than 14 years old.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 33. 34, 129; Dec. Dig. § 23.*]

Action by Barnhill's administrator against the Mt. Morgan Coal Company, for alleged wrongful death of a child 10 years of age. Verdict directed for defendant.

R. S. Rose, of Williamsburg, Ky., for plaintiff.
J. N. Sharp, of Williamsburg, Ky., for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

COCHRAN, District Judge (charging jury): I have considered the decisions that have been offered on both sides, and the suggestions that have been made, and I have a clear conviction as to the law of this case and as to my duty in reference to it, and I will try to make plain my conception of the law. I will deal with it, first, on the basis that the defendant took no precaution to prevent the operation of the empty coal cars, and then allude to that feature of the case.

[1] This case is based on what is known as the "Turntable Doctrine." To deal with a case claimed to be based on any such ground as this, one should have an accurate knowledge of just what the turntable doctrine is. That doctrine is, as I understand it, that if one has on his premises something that is dangerous to children, i. e., of such character that it is likely that children themselves can create danger out of it, and it is attractive, or alluring, or enticing to children, he owes the duty, as a matter of common humanity, to protect that thing and guard it from danger to children. Now, I said "to children." That is too broad. The doctrine is not that broad. It is to children of tender age. It is essential that the dangerous condition, whatever it may be, on one's premises, should be a danger to children of tender age. There is no doctrine here in the law that if a man has on his premises that which can be made dangerous by grown men, or children who are not of tender age, which may thus be made attractive to such children, so that they may be hurt or injured thereby, the owner of the premises must guard that from being interfered with. It is absolutely essential that the thing which it is claimed should be guarded against operation or handling in any way should be something that can be handled by children of tender age and made dangerous by them. And so it is that we find all of these cases based on the turntable doctrine that have been cited are cases where the children were of tender age.

Take the Stout Case (Sioux City v. Stout, 17 Wall. 657, 21 L. Ed. 745), for instance. The child there was 6 years of age, and of the two boys that went with him, one was 9 and the other 10 and these three young boys could operate that turntable by themselves, and could create a danger there.

Then take the case of Illinois Central R. R. v. Wilson, 63 S. W. 608, 23 Ky. Law Rep. 684, a hand car case, where the railway company left the hand car out on the macadam, and some small boys came along and used it, and one of the little boys got hurt, and it was held that the railway company ought to have guarded and protected that hand car. There the boy was nine years of age.

And so in the Hicks Case (U. S. Natural Gas Co. v. Hicks, 134 Ky. 12, 119 S. W. 166, 23 L. R. A. [N. S.] 249, 135 Am. St. Rep. 407), where a natural gas company up here in Eastern Kentucky had some defect in its pipe line, by which a little boy got hurt. At the time of his injury, appellee was about 8 years of age, and he was with a brother about 4 years old and a neighbor's boy about 7 years of age.

Then this later case that went up from Pike county against the Chesapeake & Ohio Railway (Brown v. C. & O. Ry. Co., 135 Ky. 798, 123 S. W. 298, 25 L. R. A. [N. S.] 717), which was a turntable case.

The boy that was hurt was 12 years of age. There the petition alleged:

"That said draw bolt was an insecure fastening, and said draw bolt could easily be removed and slipped to either side by a child 7 or 8 years old, so that said turntable would revolve, and small children had previous to the time of the injuries complained of been in the habit of removing said draw bolt and using said turntable as a merry-go-round, and said turntable was very attractive to children," and so on.

Now these are all of the cases that the plaintiff cites, and they are all cases involving children of tender years. Only one of them was a child over 10 years of age, and that is the last one, and the thing complained of was a thing that it was alleged could be made dangerous by a child 7 or 8 years of age.

Then there is the New Jersey case, in 169 Fed. (Snare v. Friedman, 169 Fed. 1, 94 C. C. A. 369, 40 L. R. A. [N. S.] 1367), where the little fellow fell in a canal, or something of that sort, I think—no, this was some obstruction in the street, and hardly comes within the doctrine. There the little fellow was 4½ years of age is my recollection.

On the other side, the cases cited were all of children of tender age.

This, then, is the doctrine: That if a man has on his premises something that can be operated by a child of tender years, and made dangerous by him, and which is alluring to him, attractive to him, and calculated to induce him to use it, that man who has that thing on his premises owes it to the child, as a matter of common humanity, to protect that thing so that a child of tender age cannot be hurt by it. That is called the "Turntable Doctrine," and this case is attempted to be brought within it. The question is, Does it come within that doctrine?

[2, 3] Here were a lot of empty coal cars, weighing 1,000 pounds each. There is no evidence in this case that any child of tender years ever attempted to operate any of these cars, or ever had anything to do with their operation, apart from this little fellow's running behind the front one of the two cars in motion, as shown by the evidence here. It is true that these cars could be operated by boys 15 or 16 or 17 years of age, and made dangerous, and made attractive to young children; but they are not children of tender age. The limit of children of tender age cannot go beyond 14. In the Hicks Case cited, in which Judge Nunn wrote the opinion, it is said:

"The proof shows, without contradiction, that appellee was only 8 years of age at the time he received his injuries, an age at which the legal presumption is that he was not accountable for his conduct. * * * The general rule is that, when a child reaches the age of 14 years, the legal presumption is that it knows right from wrong, and it is responsible for its acts. Between that age and 7 years the legal presumption is with the child, and to make it responsible it must be shown by testimony that it had sufficient intelligence and discretion to realize and to know what would be the result of its act."

So far as this evidence shows, these coal cars had never been operated by anybody except children over 14. There is no evidence here that children 14 or under had ever undertaken to, or could, run or push these cars the 300 feet over the level track, in order to get them to the

place where the main track ran down hill, or would have had the hardihood after they had pushed them there to get on these cars and run down the incline. So the condition of things here is that there is no evidence that cars left as the Mt. Morgan Coal Company left these cars could have been handled by children 10 years of age, or by children of tender years, and made dangerous, or that if they had handled them, it was likely that they could have operated them, or that notice had ever been brought to the Mt. Morgan Coal Company that such children had ever attempted or undertaken to make that shift, or in any manner to handle these empty cars. And so this case, even if no precaution had ever been taken by the coal company, is outside of the turntable doctrine on which it is based.

Assuming that one of these boys who testified here had been hurt in running these cars, could he have recovered? Why, certainly not. Each one of them was old enough to know what he was about, what he was doing—that he was playing and fooling with other people's property that he had no right to handle, and to appreciate the risk—and so none of these boys could have recovered, if he had been injured. The condition of things was that these cars were left there so that children who were not of tender age, or a grown man, could operate them and make them attractive and alluring to younger children. And that is what actually happened. These boys 15, 16, and 17 years of age were operating that car, and this little fellow, 10 years old, came along with his blackberries, and saw them going by there, and he put down his blackberries, ran behind the front car, and fell and was run over by the hind car and was injured and killed.

But I should respond to the position in Brown v. C. & O. R. Co., where it was held that the railway company was liable under the turntable doctrine, because, notwithstanding the little boys had not pulled the bolt that operated it, grown men had done it, Judge Nunn holds that that did not relieve the railway company from liability. In that case the railway company had been guilty of negligence in leaving the turntable so that it could be operated by a child of seven or eight years. The petition alleged in so many words:

"That said draw bolt was an insecure fastening, and said draw bolt could easily be removed and slipped to either side by a child 7 or 8 years old, so that said turntable would revolve, and small children had, previous to the time of the injury complained of, been in the habit of removing said draw bolt and using said turntable as a merry-go-round."

There was, then, in this Brown Case, negligence on the part of the railway company, because the turntable was left in such condition that it could be operated by children under 10 years of age, the grown men co-operated with their negligence, and the two negligences concurred to produce the injury.

But that is not this case. Here the coal company was not negligent, because there is no evidence here that these coal cars had ever been attempted to be operated by children of tender years, or that it was likely they could have been operated by them.

But that is not all of this case: The coal company knew and recognized the fact that these cars were being thus operated, or might be so

operated, and it took precaution to prevent it, and had derailed a car at the connecting point of the side track on which they were standing with the main track. The evidence agrees on both sides as to that; there is no difference and no conflict in the evidence. If that car had been allowed to stay there, nobody could have operated these cars, and it could not have been moved by children of tender years—it could only have been moved by large boys or men.

But it is said that it remained there for some time in that condition, and that the coal company ought to have put it back; and this case of Illinois Central R. R. Co. v. Wilson—the hand car case—is cited as authority for that position. In that case, the hand car had been placed on a strip of ground which had been macadamized by the company, and used by the public in going to and from its trains; and the hand car was left without guard, and unlocked, and had been left so from Monday until Friday, when the accident occurred. The employés of the railway company in that case had put the hand car there, and had left it in an unguarded condition. Here, no employé of the coal company had removed that coal car; it had been removed by these larger boys, in order to operate the cars. And after that car had been derailed there, as an additional precaution to prevent the operation by these boys of these empty cars, the coal company had the right to rely on the fact that that derailed car would remain where it was until it had notice to the contrary; and there is no evidence here that, prior to the accident, they had any notice of the removal of that car. So I am constrained to hold as a matter of law that there is no legal liability on the part of the defendant.

Now, gentlemen of the jury, the law imposes on me a certain duty, and that is that if there is no conflict in the evidence, or as to the reasonable inferences therefrom, to direct a verdict. That is a matter in which I have no option. I cannot say I will or I will not leave a case to the jury, just as I please. The law imposes on me the obligation and the duty that if, according to my conviction (and I may be wrong; I do not pretend further than to follow my convictions), under the undisputed evidence, there is no liability, to direct the jury to find for the defendant. I would be only too glad to get rid of that responsibility, and let other men than myself assume it and determine whether property should be taken from one and given to another, because it is a serious responsibility. But I cannot shirk it, and I have given you my reasons for the view I have, so that you can see what the reasons are that have driven me to this course, and that it is not an arbitrary action on my part.

So you can prepare your verdict.