## Haar v. Vogelman Bakery Co., Inc.

February 21, 1950.

Joseph P. Goodenough, Judge.

Stanley Chrisman for appellant.

Orie S. Ware and Vincent Reuscher for appellee.

JUDGE HELM—Affirming.

Appellant, Louis Haar, by his next friend, Edward Haar, resting his case on what is known as the "attractive nuisance" doctrine, sought damages because of a burn. The trial court sustained a demurrer to the petition as amended. Appellant appeals from the judgment dismissing the petition.

Appellant alleges that appellee, Vogelman Bakery, Inc., owns a garage on Patton Street in Covington where it maintains and services its trucks; that in the garage there is "a gasoline pump for the purpose of filling the trucks with gasoline, and * * * by the gasoline pump on the floor it has a small can with a spout on it in which there is usually kept gasoline." On or about June 17, 1948, James Hyland had a roll of paper caps; he went to the garage with appellant, Louis Haar, 8 years of age; he poured a "small quantity of gasoline into a container from the little can beside the pump," took it "out to the sidewalk and while the appellant * * * looked on * * * James Hyland took a brush," dipped it into the gasoline and smeared some of the gasoline on the caps. James then hit the caps with a rock, causing them to explode. The flame set the gasoline in the container on fire, and "in an effort to put out the fire in the container, the Hyland boy kicked the little container holding the gasoline, causing the gasoline to be thrown upon the clothing of the Haar boy, thereby burning his right leg."

It is the appellant's theory that "the appellee permitted children of tender years * * * to come about their garage * * *; that they owed a duty to the children to

see that they were protected from anything 'that might arouse their curiosity and lead them to danger.''

Each attractive nuisance case is governed by its own facts. Appellant states that the facts in this case are very similar to the facts in Union Light, Heat and Power Company v. Lunsford, 189 Ky. 785, 225 S. W. 741. In the Lunsford case the power company owned a vacant lot in Covington where boys were accustomed to play. The lot was especially attractive to boys by the presence of a large pit. This pit, about 60 feet across and about 20 feet deep, had at one time been used as a gas tank. Water stood in it to the depth of several feet. In this water were frogs, turtles, and old electric light bulbs. The boys used gum shooters in shooting at the light bulbs, frogs and turtles. Lunsford shot at a frog, which jumped inside a transformer fence. He reached in to get hold of the frog. In doing so he came in contact with an exposed wire heavily charged with electricity and was severely injured. Obviously, this was a different situation from that in the present case.

Appellant calls our attention to Deaton's Adm'r v. Kentucky & West Virginia Power Co., 291 Ky. 304, 164 S. W. 2d 468. The Deaton boy climbed a power line tower, touched and was killed by an uninsulated wire carrying several thousand volts of electricity. The facts in the Deaton case are not similar to the instant case.

In Teagarden v. Russell's Adm'x, 306 Ky. 528, 207 S. W. 2d 18, cited by appellant, the facts are not similar to the facts in this case. Appellant calls our attention to Jarvis v. Howard, 310 Ky. 38, 219 S. W. 2d 958. There it was contended that a ramp was an attractive nuisance to children of tender years. We set out a definition of attractive nuisance, but we cited Teagarden v. Russell, supra, in which it was said (306 Ky. 528, 207 S. W. 2d 20): "* * * It would serve no useful purpose to attempt herein to again analyze our cases dealing with the doctrine, nor do we deem it necessary to attempt to define in general terms what constitutes an attractive nuisance, since each instrumentality or operation constituting an attractive nuisance must be viewed in the light of the facts and conditions relating thereto.''

The trial judge, in his opinion in the present case, referring to the cases cited by appellant, says: ''We have read these cases but the facts therein present a

situation wholly dissimilar to the facts alleged in the petition before us.'' He calls our attention to Dahl v. Valley Dredging Company, 1914, 125 Minn. 90, 145 N. W. 796, 797, 52 L. R. A., N. S., 1173, where ''a boy seven years of age was injured when he and his young brothers were playing about a dredge to which they had been frequently attracted. One of the boys procured a match from a box in the engine room of defendant company and found some waste which he set on fire. One of the boys secured some naptha, which was kept in a pot upon the shelf in the engine room, poured it upon the waste which instantly blazed up, setting the naptha in the pot on fire and burning the boys.'' In the Dahl case the court said:

''Gasoline, naptha, and kerosene are products of petroleum in common use. * * * It is a matter of common knowledge that both kerosene and gasolene are usually kept in the majority of households, and are seldom so guarded that children cannot get possession of them, if they should attempt to do so. These liquids are not naturally attractive to children and are dangerous only when brought in contact with fire.

''* * * If defendant was negligent under the facts of this case, every householder who permits a can of gasolene or kerosene to remain where a neighbor's child has access to it, is likewise negligent. * * *

''The care taken by people generally to prevent injury from articles in common use is a proper guide for the courts in determining what constitutes due care in respect to such articles. The law does not exact a degree of care in guarding any article which will make the great majority of the possessors of that article chargeable with habitual or continuous negligence. * * *''

In Latta v. Brooks, 293 Ky. 346, 169 S. W. 2d 7, 9, a contractor left some ordinary building lime in an iron wheelbarrow in a garage where Jimmy Latta and other children were accustomed to play. One of the boys playing there threw some lime into Jimmy eyes, severely burning them. After setting out the basis of the attractive nuisance doctrine, we said: ''The question is, Does ordinary unslacked building lime fall within that category? We think not. Lime is a common article of building material and is used generally in construction work.''

In Jones Savage Lumber Co. v. Thompson, 233 Ky. 198, 25 S. W. 2d 373, the lumber company left dynamite caps in the basement of a school building where children played. The caps were bright and shiny and attracted the attention of Cecil Thompson, 8 years of age; he carried one home, placed the cap upon a rock and struck it with another rock, causing it to explode, thereby burning and injuring the face of his small brother. But in the instant case, the roll of caps was not found by James Hyland in the garage of appellee, but was brought from his home or some other place.

In Watral's Adm'r v. Appalachian Power Co., 273 Ky. 25, 115 S. W. 2d 372, 375, a small boy was flying a kite with a small copper wire, which came in contact with a high tension wire. The small copper wire became charged with a high voltage of electricity. The boy's mother undertook to assist her son; her cries, when she was shocked and burned by the electric current, brought to her side a neighbor who, in attempting to assist her, was electrocuted. There we said: "One is bound to anticipate only the reasonable and natural consequences of his conduct, and is not required to guard against that which a reasonably prudent person, under the circumstances, would not anticipate as likely to happen."

The trial court reached the conclusion that the proximate cause of appellant's painful injury was the striking of the roll of caps by the Hyland boy, and his kicking the burning gasoline against appellant. He was of the opinion that the facts and circumstances of this case do not bring it within the attractive nuisance doctrine.

The petition as amended having failed to state a cause of action, the trial court correctly sustained appellee's demurrers thereto.

The judgment is affirmed.