## COLLINS et al.
### v.
## LIQUID TRANSPORTERS et al.

Court of Appeals of Kentucky.

Nov. 13, 1953.

L. D. May, Pikeville, for appellants.

Robert T. Caldwell, Ashland, for appellees.

MILLIKEN, Justice.

We are asked to impose strict or absolute liability upon a shipper of large quantities of gasoline by tank truck upon the public highways. The appellants sued Liquid Transporters, Inc., a licensed carrier, for damages from fire allegedly caused by the negligent operation of a tank truck containing over 4,000 gallons of gasoline which was being transported for the shipper, Standard Oil Company of Kentucky, to one of its distributing centers. The appellants based their action against Standard Oil upon the theory that the transportation of such a large quantity of gasoline upon the public highways was such an ultrahazardous undertaking that the shipper could not delegate to its independent contractor, the carrier, Liquid Transporters, its duty to protect the public. The trial judge sustained Standard Oil's demurrer to the action against it, and whether his ruling is correct is the only question before us. We advanced this appeal because the trial of the appellants' action against Liquid Transporters, as well as other lawsuits growing out of the same accident, awaits our decision.

In Section 520 of the Restatement of the Law of Torts, an activity is declared to be "ultrahazardous" if it "(a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and (b) is not a matter of common usage." Gasoline is an article in common usage, and the transportation of it in substantial quantities upon the public high-

ways is an essential step in the creation and maintenance of that common usage. When proper safety precautions are taken, the utility of the activity apparently has been deemed to justify the risk involved. The General Assembly has delegated to the Department of Motor Transportation the power to regulate generally the trucking industry, and the Department has the authority to fix or approve contracts of carriage, to adopt safety standards for both operation and equipment, and it must see to it that carriers meet the statutory insurance requirements. So far as the safety of the public is concerned, we believe the determination of what regulation is required rests with the Department; the legislative grant is not to the courts. KRS, Chapter 281; Costello v. Smith, 2 Cir., 179 F.2d 715, 16 A.L.R.2d 954. If the powers of the Department or the requirements of the statutes are inadequate, that is a matter for the Legislature, not the courts.

However that may be, the old common-law rule that an employer is not liable vicariously for the negligence of his independent contractor has been steadily weakened by the perforations of added exceptions. The rule was based upon the fact that the employer had no right to control the manner in which the work was done, but the current argument is "that the enterprise is still the employer's since he remains the person primarily to be benefited by it; that he selects the contractor, and is free to insist upon one who is financially responsible, and to demand indemnity from him, and that the insurance necessary to distribute the risk is properly a cost of the business." Prosser on Torts, page 484. There are situations where the employer may not delegate the duty to an independent contractor such as "the duty of a carrier to transport its passengers in safety, of a railroad to fence its tracks properly and to maintain safe crossings, of a municipality to keep its streets in repair, the duty to afford lateral support to adjoining land, to refrain from obstructing the public highway, to keep premises reasonably safe for business visitors, and many others. It is difficult to suggest any criterion by which the nondelegable character of such duties may be determined, other than the conclusion of the courts that the responsibility is so important to the community that the employer should not be permitted to transfer it to another. So far as they may be willing to broaden the category in the future, the law may approach an ultimate rule that any duty which can be found to rest upon the employer himself cannot be delegated to an independent contractor." Prosser on Contracts, pages 486, 487. See, also, 60 C.J.S., Motor Vehicles, § 455; 27 Am.Jur., Independent Contractors, Section 39; Jennings v. Vincent's Adm'x, 284 Ky. 614, 145 S.W.2d 537; Haar v. Vogelman Bakery Co., 312 Ky. 307, 227 S.W.2d 423; Greater Louisville First Federal Savings & Loan Ass'n v. Stone, Ky., 242 S.W.2d 739; 47 N.W.U.L.R. 855, article, and criticism at page 933; 28 N.Y.U.L.R. 1069; 27 N.Y.U.L.R. 564.

In the case at bar, no factual data have been presented, for only the pleadings are before us and we have been supplied no judicial decisions which apply the rule of strict liability, regardless of fault, to transportation of gasoline upon the public highways. Where adequate regulation for the protection of the public is attained or attainable through legislation and administration, judicial extension of this doctrine of the common law appears neither necessary nor wise. In the pleadings at bar, the negligence of the driver of the tank truck is the only misconduct alleged. It is an allegation not peculiar to the handling or transportation of gasoline on the public highways, but an allegation so general and adaptable that it could describe at times the operation of every vehicle from kiddy cars to steamboats.

In view of the general usage of gasoline, the need of using the public highways in its distribution, the administrative facilities available for the regulation of its transportation, and the great care ordinarily followed in handling it, we conclude that the trial judge correctly sustained the demurrer of Standard Oil.

The judgment is affirmed.